**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **CITY OF DERIDDER** | **CASE NO. 2:26-CV-01376** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **MUELLER SYSTEMS L L C** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM RULING

Before the Court is "Defendant Mueller Systems, LLC's Motion to Dismiss " (Doc. 6).[1] After Plaintiff, City of DeRidder (the "City") filed this Motion, the City filed an Amended Complaint,[2] which prompted Defendant Mueller Systems, LLC ("Mueller") to file "Defendant Mueller Systems, LLC's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 13). The Court will deny as moot, the first Motion to Dismiss (Doc. 6).

## BACKGROUND

On January 1, 2017, the City entered into a Master Service Agreement ("MSA")[3] with Mueller for the sale of water meters.[4] The City received the meters from Mueller in "three phases from 2017 through 2021."[5] The City alleges that the water meters manufactured and sold by Mueller are defective,[6] and thus Mueller breached the MSA.[7]

The City alleges that some of the water meters "stopped recording water consumption" and beginning in late 2024, "multiple Mueller meters report[ed]

---

[1] Considering the Amended Complaint was filed after Mueller's Motion to Dismiss, the Court will deny that Motion as moot and consider Defendants later filed Motion to Dismiss the Amended Complaint.
[2] Doc. 11.
[3] Defendant's exhibit 1.
[4] Doc. 11, ¶¶ 7,8, Amended Complaint.
[5] *Id.* ¶ 12.
[6] *Id.* ¶¶ 6-7, 20.
[7] *Id.* ¶ ¶ 48-50.

consumption to the incorrect decimal point."[8] The City alleges that Mueller knew that the water meter models and AMR/AMI components it sold to the City were prone to systemic, premature failures of the precise kinds the City would later experience including non-functioning meters, meters reading to the incorrect decimal point, and radio-transmitter failures preventing meters from communicating with the AMR/AMI system. The City relies on a lawsuit entitled *Harris County Municipal Utility district No. 281 and NO. 282 v. Mueller Systems, LLC and Mueller Water Products, Inc.,* Civil Action No. 4:22-cv-3648 (S.D.Tex., Houston Div.), which indicate the same failures that the City is experiencing with its water meters.[9] The City complains that despite Mueller's foreknowledge of these failures in its products, it failed to disclose them to the City in its negotiations, sales communications, presentation, brochure or representations.

The City alleges that after discovering the defects in late 2024, within the warranty periods specified in Appendix A of the MSA, the City notified Mueller in writing of the defective meters and submitted claims under Section 8(c) of the MSA. Subsequently, the City made the defective meters available for inspection and analysis. Mueller accepted the City's warranty claims as timely and proper and acknowledged the defects and agreed to replace the defective meters.[10] The City then complains that Mueller failed to perform its repair-or-replace obligation under § 8(c) and Appendix A of the MSA and the meters continue to fail at an increasing rate without any remedy provided by Mueller. As such, the

[8] *Id.* ¶ 20.
[9] Complaint, ¶ 13, Doc. 1. The City alleges that Mueller had received return orders for these products since at least 2012 and a spreadsheet produced in that litigation identified these failures as well as failure in other water districts.
[10] *Id.* ¶ 25.

City alleges that Mueller intentionally withheld material information from it concerning the pre-sale knowledge of the defects in the water meters.

In its Amended Complaint, the City asserts two claims: redhibition (Count I) and breach of express warranty/breach of contract (Count II).[11]

**<u>RULE 12(b)(6) STANDARD</u>**

Rule 12(b)(6) allows for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund v. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

---

[11] *Id.* ¶¶ 37-52.

## LAW AND ANALYSIS

In its Motion to Dismiss the City's redhibition claims, Mueller argues that the MSA disclaims the implied warranty against redhibitory defects and the City cannot circumvent the MSA's disclaimer. Mueller also maintains that a defect could not have plausibly existed at the time of the sale.

Mueller also moves to dismiss the City's breach of contract claims. Mueller argues that a breach of contract claim is not cognizable under Louisiana law because actions based on breach of warranty against defects are to be pursued in redhibition instead of breach of contract, citing *Leo v. Jeld-Wen, Inc.*, 835 Fed.Appx. 727, 731 (5th Cir. 2020). Additionally, Mueller contends that the City's breach of contract claims fails because the MSA provides the exclusive repair-or-replace remedy. Mueller also contends that the City's breach of contract claim fails because the City failed to allege compliance with the warranty procedure.

Additionally, Mueller seeks to dismiss the breach of contract claim with regard to Louisiana Civil Code article 1997 to the extent it seeks recovery against Mueller as a "bad faith obligor." Finally, Mueller moves to dismiss the City's claims for damages sought that exceed those provided in the MSA.

Plaintiff seeks rescission of the MSA, return of the purchase price plus interest, damages for lost revenue, expenses related to the "attempted correction" and "preservation" of the allegedly defective water meters, attorney fees, and litigation costs.

*Redhibition*

"Sales of goods in Louisiana carry an implied warranty that the goods are free of hidden defects ('redhibitory vices')[.]" *Datamatic, Inc. v. Int'l Bus. Machs. Corp.*, 795 F.2d 458, 461 (5th Cir.1986). "This warranty against redhibitory vices arises out of the contract of sale." *Id.* "The seller [impliedly] warrants the buyer against redhibitory defects, or vices, in the thing sold." *Stone Energy Corp. v. Nippon Steel*, 475 F. Supp. 3d 563, 571 (W.D. La.2020) (quotations omitted).

"A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect." *Id.* (quotations omitted). "A defect can also be redhibitory when without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price." *Id.* (quotations omitted). "Thus, redhibition requires (1) a defect (2) that exists at the time of sale (3) that renders the thing useless or so inconvenient that the buyer would have either not bought it or paid much less for the thing, and (4) a defect of which the buyer was unaware (hidden)." *Id.*

Mueller argues that the MSA effectively disclaims the implied warranty against redhibitory defects. Mueller relies on the following disclaimer in § 8 of the MSA:

> f. DISCLAIMERS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE WARRANTIES AND REMEDIES STATED ABOVE ARE EXCLUSIVE AND NO OTHER WARRANTIES OR REMEDIES EXPRESS, IMPLIED OR STATUTORY, APPLY TO THE DOCUMENTATION, THE SOFTWARE, THE EQUIPMENT OR ANY SERVICES TO BE PROVIDED BY PROVIDER UNDER THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO WARRANTIES OR CONDITIONS OF TITLE, NON-INFRINGEMENT, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, QUALITY OR PERFORMANCE, AND ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF

> DEALING OR USAGE OF TRADE, ALL OF WHICH PROVIDER EXPRESSLY DISCLAIMS.[12]

Mueller argues that this language is broad enough to exclude the warranty against redhibitory defects that is implied in sales under Louisiana law, citing *R-Square Invs., Inc. v . Teledyne Indus., Inc.,*1997 WL 436245 at *1-2 (E.D. La. 1997).

Mueller contends that the City cannot circumvent the MSA's disclaimer noting that the City relies on Louisiana Civil Code article 2004[13] to nullify the disclaimer due to Mueller's alleged intentional or gross fault.[14] Mueller argues that the City has failed to allege the declaration requirement or knowledge requirement of Louisiana Civil Code Article 2548.[15] Additionally, Mueller disputes Plaintiff's contention that the MSA is ambiguous.

The City argues that § 8(f) and (10) of the MSA contradicts the express warranty representations contained in § 8(c), which creates an ambiguity. Section 8(c) provides the following:

> <u>Equipment</u>. Subject to the exclusions herein, including those in <u>Appendix A</u>, Provider warrants to Customer that the Equipment will be free from defects in material and workmanship for the periods specified in <u>Appendix A</u>. Claims under this Section will be considered if submitted to Provider within sixty (60) days following the discovery of any defect covered by this Section . . . . Provider's entire obligation and Customer's exclusive remedy with respect to the Equipment warranties set forth herein, at Provider's option, is repair or replacement of any Equipment found defective during the applicable warranty period after such Equipment is properly packaged and returned prepaid to Provider's designated service center.[16]

[12] Plaintiff's exhibit 1, p. 20.
[13] Article 2004 provides that "[a]ny clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damages to the other party."
[14] See Amended Complaint, ¶ ¶ 30, 44, Doc. 11.
[15] Article 2548 requires that any waiver of the implied warranty against redhibitory defects be (i) written in clear and unambiguous terms, (ii) contained in the contract, and (iii) brought to the buyer's attention or explained to him.
[16] Defendants exhibit 1, p. 20.

Section (10) **LIMITATION OF LIABILITY** provides the following:

> a. IN NO EVENT WILL PROVIDER BE LIABLE FOR ANY LOSS OR PROFIT OR OTHER COMMERCIAL DAMAGE, INCLUDING BUT NOT LIMITED TO SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER INDIRECT DAMAGES UNDER ANY CAUSE OF ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, CLAIMS ARISING FROM MALFUNCTION OR DEFECTS IN THE SOFTWARE OR EQUIPMENT, THESE LIMITATIONS WILL APPLY FOR ANY CLAIMS, INCLUDING WITHOUT LIMITATION, CONTRACT, TORT (INCLUDING NEGLIGENCE) AND STRICT LIABIITY EVEN IF PROVIDER OR ITS REPRESENTATIVE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. PROVIDER'S MAXIMUM LIABILITY HEREUNDER IS EXPRESSLY LIMITED TO THE TOTAL AMOUNT PAID FOR THE SOFTWARE, SERVICES, AND EQUIPMENT IN THE IMMEDIATELY PRECEDING TWELVE (12) MONTHS AND WILL UNDER NO CIRCUMSTANCE EXCEED THE AMOUNT PAID BY CUSTOMER IN THE IMMEDIATELY PRECEDING TWELVE (12) MONTHS FOR THE SOFTWARE, SERVICES AND EQUIPMENT PROVIDED BY PROVIDER UNDER THIS AGREEMENT. . . .[17]

The language in § 8(c) provides an express but limited warranty for defects of the water meters. To the extent that Mueller relies on the disclaimer provision in § 8(f) to renounce its obligation to deliver the water meters free of defects, the Court finds that the two provisions § 8(c) and 8(f) are at odds with one another. The language in § 8(f) appears to clearly disclaim the implied warranty against redhibitory defects, whereas § 8(c) clearly provides an express warranty against defects.

The City relies on *Nathaniel Shipping, Inc. v. General Elec. Co.* 920 F.2d 1256 (5th Cir. 1991), which addressed an ambiguity resulting from an express warranty combined

---

[17] *Id.* p. 21.

with a purported limitation of the warranty. The Court determined that "clauses that purport to limit a party's legal responsibility are strictly construed and to be given effect must clearly express the intent of all parties whose liability is altered by the agreement." citing *Bosnor, S.A. De C.V. v. Tug LA.BARRIOS*, 796 F.2d 776, 781 (5th Cir. 1986). "Where, as here, an express warranty and a disclaimer of liability potentially conflict, we must harmonize the two, construing ambiguities *contra proferentem* and in favor of warranty coverage." Citing *Employers Ins. Of Wausau v. Trotter Towering Corp.*, 834 F.2d 1206, 1210 (5th Cir. 1988).

Additionally, the City remarks that the Contract Agreement expressly states that "the Owner's sole and exclusive warranty is that provided by the product's manufacturer" and "all manufacturers' warranty and service obligations shall be for the benefit of the Owner."[18]This provision likewise contradicts the MSA's Disclaimer and Limitation of Liability.

The City also directs the Court to Appendix A to the Master Agreement, which states that the meters "are guaranteed to perform to AWWA new meter accuracy standards" for a particular period of time (depending on the model of meter)."[19]

The Court agrees with the City that the conflicting provision must be construed against the drafter, Mueller, and as such the Court finds that the MSA must be interpreted to provide a warranty against defects in the water meter system.

---

[18] Amended Complaint, ¶ 35, Doc. 11.
[19] See Appendix A, pp. 13, ¶ ¶ 1- 2, Doc. 13-2.

However, the MSA expressly limits or excludes Mueller's liability as to special, incidental, consequential or other indirect damage that would arise out of or relates to the MSA, including any claims that arise from malfunction or defect in the software or equipment. The limitation restricts the City's recourse to the total amount paid for the software, services and equipment in the immediately preceding twelve months, not to exceed the amount paid by the customer, within the preceding twelve months.

The City argues that Mueller's actions were intentional and/or gross fault due to its pre-sale knowledge of the defects, which Mueller intentionally failed to disclose. The City argues that the limitation of liability clause is null based on Louisiana Civil Code article 2004. Additionally, the exclusion and/or limitation of warranty is alleged to be ineffective under Louisiana Civil Code article 2548 because Mueller declared that its product had a quality that it knew it did not have.

Here, the City contends that Mueller had pre-sale knowledge of inherent defects in its products, and that Mueller failed to disclose that knowledge, The City accuses Mueller of making misrepresentations of material fact and acting in a fraudulent manner. The City argues that such conduct is prohibited by Louisiana Civil Code article 1953 and is conduct that was intentional or gross fault such that its limitation of liability clause is null under Louisiana Civil Code article 2004. "The term 'gross fault' in that provision 'encompasses not only gross negligence, but also bad faith breach of contract or fraud.'" See *Alonso v. Westcoast Corp.*, 920 F.3d 878, 885 (5th Cir. 2019) quoting *Wadick v. General Heating & Air Conditioning, LLC*, 145 So.3d 586 (La.App. 4 Cir. 7/23/14); see also *Rosenblath's Inc.*

*v. Baker Indus., Inc.*, 634 So.2d 969, 971 (La. App. 2 Cir. 3/30/94) (Parties cannot limit liability for gross negligence).

The City has alleged that Mueller knew of multiple complaints and lawsuits against it throughout the United States for defective water meters, which complaints and litigation matters also cited Mueller's non-responsive and/or slow responses to defect complaints and calls in warranty. The multiple complaints and lawsuits also cited Mueller's ineffective warranty responses and continuing failures to correct defects in its water meters.[20]

Additionally, the City argues that Mueller's exclusion or limitation of warranty is ineffective under Louisiana Civil Code article 2548 based on the manufacturer's declaration that its product "has a quality that he knew it did not have." Again, the City has alleged that Mueller was aware of its meters' defects prior to the sale of the meters to the City. The City asserts that Mueller made representations about the meters' qualities that it knew the meters did not have, and such non-disclosure constitutes fraud within the meaning of Louisiana Civil Code article 1953.

Mueller also seeks to dismiss the City's fraud claims. Fraud may vitiate the consent necessary to form a contract. *Shelton v. Standard/700 Assocs.*, 2001-0587 (La. 10/16/01), 798 So.2d 60, 64. Article 1953 states: "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." The

[20] First Amended Complaint, ¶ ¶ 13-17; see ¶ 13 for specifics as to that litigation.

City relies on Mueller's misrepresentations as to the water meters' ability to accurately measure water. The City has alleged that:

> Having made these affirmative representations about the meters' performance and quality, Mueller was bound to disclose the whole truth, including the contradicting material facts within its knowledge described in Paragraphs 12 and 13. That partial disclosure, together with Mueller's exclusive knowledge of its own internal failure data, return history, and warranty experience, gave rise to a duty to disclose the known systematic failures of the meter and radio models being sold to the City. Mueller's silence in the face of that duty was a suppression of the truth made to obtain the unjust advantage of inducing the City's purchase and securing the Master Agreement's limitation and disclaimer provisions.[21]

Additionally, the City has alleged that had it known of the matters in ¶ ¶ 12 and 13 (the alleged defects known by Mueller), it would not have purchased the water meters or entered into the contract and MSA.[22] The City argues that Mueller's fraud is predicated on promises it made regarding the quality of the water meters and because Mueller knew of the alleged defects, yet failed to disclose that knowledge to the City prior to entering the contract. The City remarks that further information and Mueller's knowledge of the known defects can be obtained through the discovery process.

The Court does not accept Mueller's position that its representations was merely "puffing" and "sales talk". Here, the City purchased a product after Mueller made representations that its meters were advanced high performance meters that would ensure accurate data and perform to AWWA accuracy standards. The meters allegedly failed to perform as expressly represented. Allegedly, Mueller had previous knowledge of failures

[21] *Id.* ¶ 17.
[22] *Id.* ¶ 19.

through customer complaints and active litigation. The City alleges that Mueller failed to disclose the meter's prior past poor performance and made representations that were allegedly not true as to the quality and performance of said meters. This is not "puffing" or "sales talk." The Court is cognizant that the prior customer complaints and litigation does not prove that the subject water meters were in truth, defective. However, the City may use this type of evidence to prove that Mueller had knowledge of specific defects.

Next, Mueller argues that Plaintiff does not plausibly allege that a defect in the water meters existed at the time of the sale. As noted by the City, Mueller expressly provided warranty periods for specific models to extend up to fifteen years. The City has alleged the specific warranty periods for the defective models and has alleged that the defects were latent.

Mueller argues that the express warranty periods do not satisfy the element that the defect existed at the time of sale and because the defect did not manifest itself within 3 days of the sale, the City has failed to establish this element of his claim.[23] Here, Louisiana Civil Code article 2530 provides a presumption that the defect existed when discovered within three days of delivery , however, as noted by the City, that does not eradicate the claim of redhibition, which can still be proven at trial.

The Court finds that the Complaint sufficiently alleges a claim in redhibition and furthermore it would be premature at this stage of the litigation to dismiss the City's claims. The Court further finds that the City has failed to allege fraud under Louisiana Civil Code

[23] LA. C.C. Art. 2530 provides that "[t]he defect shall be presumed to have exited at the time of delivery if it appears within three days from that time.

article 1953. Rule 9(b) requires, at a minimum, that a plaintiff set forth the who, what, when, where, and how of the alleged fraud." *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 735 F.3d 202, 204 (5th Cir. 2013) (quotations omitted). As such, the Court will dismiss the City's allegation of fraud but will allow it to conduct necessary discovery and reassert this claim through an amended complaint, if it so chooses.

*Breach of Contract*

The City alleges in Count II that Mueller breached the express warranty/breach of contract in the MSA (1) that warranted that the purchased equipment would be free from defects, (2) wherein Appendix A to the MSA guaranteed that the water meters would perform under the AWWA standards, and (3) Mueller's failure to perform its obligations under the MSA's repair-or-replace remedy.

Mueller moves to have the City's first two theories of breach dismissed. Mueller argues that they are now subsumed under the Louisiana Products Liability Act ("LPLA"). Mueller contends that Louisiana law requires that a plaintiff pursue a claim in redhibition instead of a breach of contract claim, citing *Leo v. Jeld-Wen, Inc.*, 835 Fed. Appx. 727, 731 (5th Cir. 2020), and also *Marseilles Homeowners Condo. Ass'n, Inc. v. Broadmoor*, *L.L.C.*, 111 So.3d 1099, 1108 (La. App. 4 Cir. 2/27/13).

Mueller furthers contends that even if the City's first two theories of breach were legally cognizable, they fail because the MSA provides that Mueller's "entire obligation and Customer's exclusive remedy with respect to the Equipment warranties set forth herein

. . . is repair or replacement of any Equipment found defective."[24] Mueller remarks that in Count II, the City is not seeking repair or replacement but is instead seeking monetary damages.

The City argues that Mueller's reliance on *Leo* and *Marseilles, supra,* is misplaced, noting that these cases addressed a prescription issue as opposed to a breach of contract claim. The City points out the following language made by the *Leo* court that defeats Mueller's argument:

> But, if a plaintiff is not seeking to recover for a redhibitory *defect*, the one-year prescriptive period does not apply. ...
>
> A claim for breach of contractual obligations contained in an express warranty, therefore, may be asserted as a breach-of-contract claim, rather than one in redhibition. ... *see also C-Innovations LLC v. Norddeutsche Seekabeleweke GMBH* ... 2013 WL 990026, at *5 (E.D. La. Mar. 13, 2013) (holding redhibition is not "the sole vehicle[ ] for a suit against a manufacturer for damages arising from a defective product," and plaintiffs may bring "contract-based claims such as breach of warranty").

*Leo*, 835 Fed. Appx. At 731. "While the LPLA governs products liability in tort, it does not preclude recovery for economic loss arising from breach of warranty or breach of contract." *McAuslin v. Grinnell Corp.,* 2001 WL 8584, *2 (E.D. La. Jan. 3, 2001) (citing cases). The Court finds that the City may assert a claim for breach of Mueller's contractual obligations for the express warranty.

Mueller then argues that the MSA limits the City's remedy to repair or replacement of any Equipment found defective but remarks that the City is seeking monetary damages, which is beyond the scope of the express limitation. The City alleges that Mueller failed to

---

[24] Plaintiff's exhibit 1, p. 20.

"repair or replace" its products, whereas Mueller contends that the City failed to comply with its contractual obligations necessary to invoke Mueller's repair-or-replace obligation.

The City argues that Mueller waived any claim of "non-compliance" with the MSA and was estopped from doing so, citing *Henning Management LLC v. Chevron U.S.A. Inc.,*2024 WL 387414, *9 (W.D. La. Aug. 19, 2024) ("Waiver occurs when a party's silence shows an intent to relinquish a right." *Arceneaux v. Amstar corp.*, 66 So. 3d438, 450 (La. 7/1/11)).

In its Amended Complaint, the City alleges that it notified Mueller within the sixty (60) day period upon discovering the defect and made the meters available to Mueller for examination and analysis.[25] The City also alleged that Mueller accepted the warranty claims as timely and proper and did not reject said claims. According to the City, Mueller agreed to replace the defective meters, thus Mueller has waived and is estopped from asserting any non-compliance from the City. The City contends that when it relied on Mueller to repair and replace the defective meters, it worsened it position by continuing to work with Mueller during the ineffective "repair or replace" period.[26]

The City also alleges that Mueller was in bad faith due to it intentionally withholding critical information, failing to disclose Mueller's knowledge of continuing, ongoing problems with its products, and its repeated, continuing violation of specified warranty guarantees despite its warranty representations. The Court agrees with the City that its

[25] Amended Complaint, ¶ ¶ 23-24, Doc. 11.
[26] *Id.* ¶ ¶ 20, 26(d), 48 and 50).

allegations, if taken as true, are sufficient to establish that Mueller waived its position that the City was non-compliant, and that Mueller was in bad faith.

Additionally, the City argues that despite the limitation concerning certain damages, the MSA does not exclude or limit direct damages. The City contends that its allegations if taken as true, would nullify the Limitation of Liability provision, and thus direct damages would be allowed, citing *Leo, supra.* Furthermore, its allegations of bad faith could make Mueller liable for all damages, foreseeable or not that are a direct consequence of Mueller's failure to perform.

The Court finds that Mueller has not established that the City's Complaint fails to state a claim upon which relief can be granted.

## CONCLUSION

For the reasons explained herein, the Court will deny Defendant Mueller Systems, LLC's Motion to Dismiss (Doc. 13), with the exception of the City's fraud claim, which will be dismissed, but reserving the City's right to conduct discovery and amend ITS complaint, if it so chooses, and deny as moot Mueller's first Motion to Dismiss (Doc. 6).

**THUS DONE AND SIGNED** in chambers on this 12th day of August, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**